No. 26-20063

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JAIME CRUISE
*Defendant-Appellant.*

---

Appeal from the United States District Court
For the Southern District of Texas

---

# BRIEF FOR THE APPELLANT

---

Darryl Austin
Attorney at Law
State Bar No. : 24058851
Address: 717 Texas Avenue, Suite 1200
Houston, Texas 77002
Tel: 832-356-7192
Email: darryl_austin1@yahoo.com

# CERTIFICATE OF INTERESTED PERSONS

United States v. Jaime Cruise,
No. 26-20063

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.

1. The Honorable Lee H. Rosenthal, Senior United States District Judge.
2. Ms. Jaime Cruise, Defendant-Appellant.
3. United States of America, Plaintiff-Appellee.
4. Counsel for Plaintiff-Appellee: United States Attorney John G.E. Marck; former United States Attorneys Nicholas J. Ganjei and Jennifer B. Lowery; and Assistant United States Attorneys Michael E. Day, Stephanie C. Bauman, Anthony R. Franklyn, and Jay Hileman.
5. Counsel for Defendant-Appellant: Robert J. Fickman and Darryl E. Austin.

These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

s/ Darryl E. Austin
DARRYL E. AUSTIN

## REQUEST FOR ORAL ARGUMENT

Defendant-Appellant Jaime Cruise ("Ms. Cruise") requests oral argument. This appeal raises a fact-intensive question regarding the district court's disposition of her motion to dismiss the indictment. Counsel believes that oral argument would be of benefit to the Court.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .................................................... ii

REQUEST FOR ORAL ARGUMENT ................................................................. iii

TABLE OF CONTENTS........................................................................................ iv

STATEMENT OF JURISDICTION........................................................................1

STATEMENT OF THE ISSUE...............................................................................2

STATEMENT OF CASE .........................................................................................3

A. Procedural History of the Case.......................................................................3

B. Background.......................................................................................................4

SUMMARY OF THE ARGUMENT .......................................................................6

ARGUMENT ...............................................................................................................7

**ISSUE RESTATED**: The trial court plainly erred by ruling the indictment specified a scheme to deprive a victim of its property and that the indictment specified a scheme whose object was property. ......................................................7

A. Standard of Review ..........................................................................................7

B. The District Court Plainly Erred in Denying Cruise's Motion to Dismiss the Indictment for Failure to Allege an Offense. ............................7

CONCLUSION..........................................................................................................18

CERTIFICATE OF SERVICE ...............................................................................19

CERTIFICATE OF COMPLIANCE......................................................................20

# TABLE OF CITATIONS

## CASES

Ciminelli v. United States, 598 U.S. 306 (2023) .......... 12

Cleveland v. United States, 531 U.S. 12 (2000) .......... 10, 14, 16

Kelly v. United States, 590 U.S. 391 (2020) .......... 12, 16, 17

Kousisis v. United States, 605 U.S. 114 (2025) .......... 13, 15

Russell v. United States, 369 U.S. 749 (1962) .......... 9

United States v. Baker, 923 F.3d 390 (5th Cir. 2019) .......... 10, 11

United States v. Cordova-Soto, 804 F.3d 714 (5th Cir. 2015) .......... 7

United States v. Flores, 404 F.3d 320 (5th Cir. 2005) .......... 8

United States v. Fontenot, 665 F.3d 640 (5th Cir. 2011) .......... 8

United States v. Hoffman, 901 F.3d 523 (5th Cir. 2018) .......... 17

United States v. Kay, 359 F.3d 738 (5th Cir. 2004) .......... 7

United States v. Montgomery, 746 F. App'x 381 (5th Cir. 2018) .......... 7

United States v. Ratcliff, 488 F.3d 639 (5th Cir. 2007) .......... 8, 10, 14

United States v. Suarez, 966 F.3d 376 (5th Cir. 2020) .......... 7

## STATUTES AND RULES

18 U.S.C. § 1033 .......... 5

18 U.S.C. § 1343 .......... passim

18 U.S.C. § 1349 ........................................ 4, 9

28 U.S.C. § 1291 ........................................ 1

Fed. R. App. P. 32(a)(5) ........................................ 21

Fed. R. App. P. 32(a)(6) ........................................ 21

Fed. R. App. P. 32(a)(7)(B) ........................................ 21

Fed. R. App. P. 32(f) ........................................ 21

Fed. R. App. P. 4(b)(1)(A)(i) ........................................ 1

Federal Rule of Criminal Procedure 12(b)(3)(B)(v) ........................................ 8

Rule 28.2.1 ........................................ ii

## STATEMENT OF JURISDICTION

Jurisdiction of this Court is invoked under 28 U.S.C. § 1291, as this is an appeal from a final judgment of conviction and sentence entered by the United States District Court for the Southern District of Texas.

The judgment appealed from was entered on the docket on February 10, 2026. Likewise, Ms. Cruise filed her notice of appeal on February 10, 2026. The appeal is timely. See Fed. R. App. P. 4(b)(1)(A)(i).

## STATEMENT OF THE ISSUE

Whether the district court reversibly erred in denying Ms. Cruise's motion to dismiss the indictment when the Court found that the indictment in fact specified an offense.

# STATEMENT OF CASE

## A. Procedural History of the Case

On July 16, 2024, the Government indicted 53 defendants for conspiracy to commit and for committing wire fraud alleging a scheme to obtain bail bonds based on false statements of cosigners' income and employment. ROA. 4. Several co-defendants moved to dismiss the indictment. See Dkt. 696 (Defendant Walker Motion to Dismiss Indictment) ROA. 12.[1] The Government responded to the initial Motion to Dismiss on December 30, 2024 when it filed its opposition. See Dkt. 724.[2] Defendant Walker filed his Reply in support of the motion to dismiss on January 15, 2015. See Dkt. 736.[3] Subsequent motions to dismiss were filed after the initial briefing.

On June 6, 2025, Jaime Cruise joined in the motion to dismiss. See Dkts. 1083-1084 (Motion to Adopt Motions of Other Defendants) ROA. 14. On May 9, 2025, the Government filed a supplemental response in opposition requesting the Court deny the motion to dismiss. See Dkt. 883 (Response in Opposition Motion to Dismiss) ROA. 12. Prior to the Government's response to the motion to dismiss, the Government superseded the indictment the day before, on May 8, 2025. See

[1] The record in this appeal is indicated "ROA. [page number]."
[2] The Government's Response at docket 724 was not included in the Record of Appeal, nor was the docket entry referenced.
[3] Defendant Walker's Reply at docket 736 was not included in the Record of Appeal, nor was the docket entry referenced.

Dkt. 890 (Superseding Indictment) ROA. 11-12. On May 23, 2025 Defendant Walker filed a supplemental Reply to the Government's Supplemental Response. See Dkt. 1061.[4] On June 17, 2025, the Court denied all the motions to dismiss and issued a Memorandum and Opinion. See Dkt. 1104 (Memorandum and Opinion) ROA. 16.

On November 20, 2025, Ms. Cruise plead guilty to Count 17 of the Superseding Indictment via plea agreement in front of Magistrate Judge Yvonne Y. Ho, reserving her right to appeal the order denying her motion to dismiss. ROA. 22, 1395-1396. Ms. Cruise was sentenced to time-served on February 4, 2026. ROA. 24. This timely appeal followed. ROA. 24.

**B. Background**

On July 16, 2024, the Grand Jury in the Houston Division of the Southern District of Texas charged the Defendant-Appellant, Jaime Cruise, with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and wire fraud, in violation of 18 U.S.C. § 1343. Two defendants, Sheba Muharib and Oscar Wattell, were also charged with crimes by or affecting persons engaged in the business of insurance whose activities affect interstate commerce, in violation of 18 U.S.C. § 1033. Ms. Cruise was only charged with one count within the indictment.

[4] Defendant Walker's Supplemental Reply at docket 1061 was not included in the Record of Appeal, nor was the docket entry referenced.

In May 2025, the Government superseded the indictment alleging that employees of a Houston-based bail bonds company, AABLE Bonds, conspired with others to falsify and obtain falsified cosigner financial and employment reports to qualify individuals detained on criminal charges for bail bonds. ROA. 139-165. Importantly, the superseding indictment alleged that when a third party cosigns a contract between a detainee and the bail bond company, the cosigner becomes an additional party to the bail bond contract, enabling an incarcerated individual to be released on bond by paying a percentage of the amount set by the court. ROA. 143, par. 4.

Defendant Walker filed a motion to dismiss the indictment for failing to allege a scheme whose object was property, and that there was no victim of the scheme. Essentially, arguing that the Government has failed to show in the pleadings how the Government in this case is an interested party or victim or that the object of the scheme was for money rather than to obtain freedom for family members.

## SUMMARY OF THE ARGUMENT

The Appellate Court should reverse Ms. Cruise's conviction and dismiss with prejudice. The District Court plainly erred when it denied Ms. Cruise's motion to dismiss the indictment, by failing to hold the Government to its obligation of sufficiently alleging facts within the indictment that state an offense. Both the Indictment and Superseding Indictments failed to both allege an offense that deprived a victim of its property, and likewise failed to allege a scheme whose object was property.

## ARGUMENT

**ISSUE RESTATED:** The trial court plainly erred by ruling the indictment specified a scheme to deprive a victim of its property and that the indictment specified a scheme whose object was property.

### A. Standard of Review

"We review *de novo* questions of statutory interpretation, as well as 'whether an indictment sufficiently alleges the elements of an offense.' As a motion to dismiss an indictment for failure to state an offense is a challenge to the sufficiency of the indictment, we are required to 'take the allegations of the indictment as true and to determine whether an offense has been stated.'" United States v. Kay, 359 F.3d 738, 742 (5th Cir. 2004). "Denial of a motion to dismiss an indictment is reviewed *de novo*," United States v. Montgomery, 746 F. App'x 381, 384 (5th Cir. 2018), but subject to harmless error analysis; see also United States v. Suarez, 966 F.3d 376, 382 (5th Cir. 2020). We review de novo a district court's denial of a motion to dismiss the indictment, including any underlying constitutional claims. United States v. Cordova-Soto, 804 F.3d 714, 718 (5th Cir. 2015).

### B. The District Court Plainly Erred in Denying Cruise's Motion to Dismiss the Indictment for Failure to Allege an Offense.

*1. Legal background.*

Federal Rule of Criminal Procedure 12(b)(3)(B)(v) permits a defendant to challenge an indictment as defective for "failure to state an offense." Dismissal is required whenever the indictment does not adequately plead each element of the

charged offense. United States v. Ratcliff, 488 F.3d 639, 648 (5th Cir. 2007) (affirming dismissal of mail-fraud indictment that had alleged only deceitful conduct without alleging a scheme to "wrong the victim's property rights"). Whether such a challenge may be resolved before trial turns largely on whether the claimed defect presents a legal question or instead requires factual findings: "The propriety of granting a motion to dismiss an indictment … by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact. … If a question of law is involved, then consideration of the motion is generally proper." United States v. Fontenot, 665 F.3d 640, 644 (5th Cir. 2011) (quoting United States v. Flores, 404 F.3d 320, 324 (5th Cir. 2005)).

2. *Neither the Original nor the Superseding Indictment Alleges the Essential Elements of Wire Fraud.*

The Government has charged Ms. Cruise with committing, and conspiring to commit, wire fraud in violation of 18 U.S.C. §§ 1343 & 1349. Section 1343 prohibits devising "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," and Section 1349 prohibits conspiracies to do the same.

The superseding indictment recites, in the language of the statute, that the defendants intended to deprive "victims, such as the Government and insurance companies, such as Financial Casualty & Surety, of money and property."

Superseding Indictment ROA 139-165, par. 14. But an indictment does not charge an offense merely by tracking the statute's words. It "must do more than simply repeat the language of the criminal statute." Russell v. United States, 369 U.S. 749, 764 (1962). Naming a victim while repeating the words "money and property" does not identify any property interest the scheme sought to obtain. The indictment must allege that money or property was an object of the scheme, and it identifies no cognizable property interest of any victim—because, as the indictment's own facts show, there is none. Intent to "deprive another of money or property" is an essential element of wire fraud. See United States v. Baker, 923 F.3d 390, 402–03 (5th Cir. 2019) (approving jury instruction with that language) (emphasis added). An indictment that alleges deceit and parrots the property element, but does not allege a scheme to wrong the victim's property rights, must be dismissed. See United States v. Ratcliff, 488 F.3d 639, 648 (5th Cir. 2007).

a. The Indictment Identifies No Property Interest of the Government

The superseding indictment names the Government as a victim, but never identifies what money or property of the Government the scheme sought to obtain or harm. Furthermore, the structure of the alleged scheme the indictment itself describes, there is none. Superseding Indictment ROA. 139-165, par. 14. In a Harris County, Texas, bail bond, the defendant pays a premium to the bail bond company, and the surety in turn guarantees the bond amount to the court; the court is owed that

amount only if the defendant fails to appear and the bond is forfeited, and even then, it is the surety, not the defendant, who must pay. See Superseding Indictment ROA. 139-165, pars. 1 and 3. False co-signer information takes no money from the Government; if anything, it shifts risk onto the surety. The Government's interest in accurate bond documentation is therefore regulatory, not proprietary—precisely the kind of sovereign interest the Supreme Court held is not "property" in Cleveland v. United States, 531 U.S. 12 (2000). Reciting the word "property" cannot supply an interest the pleaded facts show the Government does not hold. Intent to "deprive *another* of money or property" is an essential element of wire fraud. See United States v. Baker, 923 F.3d 390, 402–03 (5th Cir. 2019) (approving jury instruction with that language) (emphasis added). The indictment does not show the essential elements of wire fraud as it relates to the Government.

b. The Only Interest of the Surety the Indictment Describes Is a Contingent Risk of Default, Which Is Not the Object of the Scheme

The prosecution arises out of a Harris County bail bond that AABLE Bonds issued for Anthony Perkins — a contract between Perkins and the bonding company. According to the indictment, two AABLE employees recruited "straw co-signers who agree to enter the contract and accept financial obligations of paying the full bond amount set by the Judge in the event of a forfeiture." ROA. 142–144. Ms.

Cruise's alleged role was limited to submitting false documentation on behalf of Co-Defendant Curtis Holliday. ROA. 149.

Those falsified disclosures did not take money or property from anyone; the only harm the indictment attributes to them is a "risk of harm to the insurance companies, through a greater risk that the defendants would default on their surety bonds." Superseding Indictment ROA. 139-165, par. 14. That is a contingent, future exposure. It materializes only if a defendant later absconds and the bond is forfeited; not a present deprivation of the surety's money or property. And, it is the very risk the surety is paid a premium to assume; assessing and bearing default risk is the business of suretyship. See Superseding Indictment ROA. 139-165, pars. 1, 3–4. A "risk of harm" of that kind cannot supply the money-or-property object the statute requires. The wire-fraud statutes "bar only schemes for obtaining property." Kelly v. United States, 590 U.S. 391, 404 (2020). Harm to property must be the object of the scheme, not merely incidental to it. Kelly, 590 U.S. at 400. A valid wire-fraud charge must therefore allege that money or property was an object of the fraud. See Ciminelli v. United States, 598 U.S. 306, 312 (2023).

The one concrete "financial gain" the indictment identifies belongs to the defendants, not a victim: "entering into the surety bond rather than having to pay the full amount of the bond to the Court." Superseding Indictment ROA. 139-165, par. 13. That is the ordinary benefit every bond purchaser obtains by paying a premium

instead of posting the full amount—not the money or property of the Government or the surety. See Id. pars. 1 and 4. What the defendants set out to obtain was a bail bond, not the money or property of any victim.

### *3. The District Court Supplied a Property Interest the Indictment Never Alleged, and Kousisis Does Not Rescue the Charge*

The district court's opinion states that "the object of the defendants' scheme is alleged to be not only to obtain bail bonds for incarcerated friends and family members, but also to deprive the government, and the insurance company, of the additional amounts of money that defendants would have had to pay if they had submitted accurate information about third-party cosigners' finances and employment." ROA. 229. Relying on Kousisis v. United States, No. 23-909, 605 U.S. 114, 145 S.Ct. 1382 (2025) the court reasoned that a defendant violates § 1343 by scheming to obtain a victim's money or property regardless of whether the defendant intends to leave the victim economically worse off.

The legal premise is sound; the factual one is not. Nowhere does either indictment allege that the Government or the surety would have received "additional amounts of money" had accurate co-signer information been submitted. The indictment alleges that the defendants intended to deprive the victims of "money and property." Superseding Indictment ROA. 139-165, par. 14. A bare recitation of the element (and that the misrepresentations) "caused a risk of harm to the insurance companies, through a greater risk that the defendants would default on their surety

bonds." Id. It does not allege that accurate disclosures would have raised the premium, required additional collateral, or produced any additional payment to anyone. The "additional amounts of money" theory is the court's own, or new theory of prosecution provided by the Government, which was supplied in its opinion to fill the money-or-property element the indictment leaves empty. However, a motion to dismiss tests the property interest the grand jury actually alleged, not one the court or Government constructs to save the charge. See United States v. Ratcliff, 488 F.3d 639, 648 (5th Cir. 2007).

The indictment's own description of how bonds work forecloses the court's theory in any event. The premium is tied to "the total bail bond amount set by the Judge." Superseding Indictment ROA. 139-165, par. 1. A co-signer's role is to let the defendant "put down less money, a percentage of the total bail bond amount set by the Judge of the court, rather than the full amount of the bond." Id. par. 4. Neither of which turns on the co-signer's finances. The Government holds no property interest the scheme could obtain or harm: it is owed the bond amount only upon forfeiture (in theory), and then from the surety, not the defendants.[5] Its interest in accurate documentation is regulatory, and a sovereign's regulatory interest is not "property" under § 1343. See Cleveland v. United States, 531 U.S. 12 (2000). The

[5] The bond was a State bond, the Government further has no entitlement to a surety in this instance upon some default by the defendants or sureties.

surety's only alleged stake is the contingent "risk" that a defendant might someday default and force a forfeiture. Superseding Indictment ROA. 139-165, par. 14. The alleged "risk" is a speculative future exposure the surety is paid a premium to assume, not a present property interest the defendants obtained.

Kousisis does not bridge that gap; if anything, it widens it. Kousisis reaffirmed that, whatever the theory of fraud, § 1343 requires that money or property be an object of the scheme that the defendant sets out to "obtain," tricking the victim into a transaction that "requires handing over her money or property." Kousisis v. United States, 605 U.S. 114, 118, 145 S. Ct. 1382, 1388 (2025). It also reaffirmed that a scheme aimed at a government's regulatory or policy interests, rather than its money or property, is not enough. Id. Both holdings favor dismissal here. In Kousisis, the defendants obtained painting and construction contracts worth tens of millions of dollars: money that flowed from the victim to the defendants because of the fraud. Id. The Court described PennDOT's regulatory interest as merely incidental to that object: "Alpha and Kousisis had money in mind. Nothing suggests that they concocted their scheme with the goal of thwarting PennDOT's disadvantaged-business initiative. Such a result was downstream of their 'object' to line their pockets." Kousisis, 605 U.S. at 133 (internal quotation marks and citations omitted).

Here, by contrast, nothing of value flowed from the Government or the surety to the defendants at all. The defendants paid the surety its full premium and obtained a bail bond. Superseding Indictment ROA. 139-165 pars. 1, 4, and 13. Whatever they "had in mind," it was bonding people out of jail—not obtaining the money or property of any victim.

Therefore, the case tracks the facts the Supreme Court found insufficient in Cleveland, and not the facts it found sufficient in Kousisis. The defendants in Cleveland had misled Louisiana to obtain video poker licenses, yet paid the State every fee those licenses required. Cleveland v. United States, 531 U.S. 12 (2000). Because they had "paid the State of Louisiana its proper share of revenue," the Court reasoned that even if the defendants had defrauded the State of "property," the nature of that property "[could not] be economic." Id. Absent an intent to obtain money or property, no conviction could stand. Id.; see also Kelly v. United States, 590 U.S. 391, 402 (2020) (explaining that the Cleveland defendants could not be convicted because the "object of the scheme was never to get [property]: It was to get gaming licenses.").

The same is true here. The defendants paid the bondsman the required premium in full. See generally Superseding Indictment ROA. 139-165 par. 1 ("the defendant pays the bail bond company a premium, which is generally a percentage of the total bail bond amount set by the Judge of the court"); see also Mot. to Dismiss

Dkt. 696 (defendants paid at least $22,550 to the bondsman for the Perkins bond). As in Cleveland, the Government has charged defendants who paid every fee owed and never took, or are even alleged to have sought to take, money or property from any victim, which cannot support a conviction. See United States v. Hoffman, 901 F.3d 523, 538 (5th Cir. 2018) (the Cleveland defendants could not be convicted because they did not aim for any financial harm, and "[q]uite the opposite," they paid all the required fees).

The indictment confirms as much on its own terms. The count in which Ms. Cruise is charged alleges that the defendants devised a scheme "in order to obtain a bail bond," and that they caused a wire transmission "in support of a bail bond" for Co-Defendant Curtis Holliday. Superseding Indictment ROA. 139-165 par. 18 (Count 17). Again, their object, as alleged, was to bond people out of jail and not to obtain money or property from anyone.

Under Kelly, a fraud charge cannot rest on a loss that is merely a contingent byproduct of the scheme rather than its object, even if that byproduct was foreseeable. Kelly, 590 U.S. at 402–03. That is precisely what the "risk … of default" pleaded in paragraph 14 amounts to. Kousisis does not change that rule; it applied the rule to a case where money or property genuinely was the object obtained. Because neither indictment alleges a cognizable money-or-property object, and because the district court's contrary conclusion rests on a property

interest the grand jury never charged, the charges against Ms. Cruise should have been dismissed.

## CONCLUSION

This Court should reverse the District Court's order denying dismissal of the Superseding Indictment, vacate Ms. Cruise's conviction and sentence, and dismiss the case.

Respectfully submitted,

By: */s/ Darryl Austin*
**Darryl Austin**
Attorney For Appellant
State Bar No. : 24058851
Address: 717 Texas Avenue, Suite 1200
Houston, Texas 77002
Tel: 832-356-7192
Email: darryl_austin1@yahoo.com

## CERTIFICATE OF SERVICE

I certify that today, July 10, 2026, the foregoing brief for appellant was served upon United States Attorney Carmen Castillo Mitchell, counsel for appellee, by notice of electronic filing with the Fifth Circuit CM/ECF system. The appellate record is available electronically.

s/ Darryl E. Austin
DARRYL E. AUSTIN

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 3,366 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word software in Times New Roman 14-point font in text and Times New Roman 12-point font in footnotes.

3. This document complies with the privacy redaction requirement of 5th Cir. R. 25.2.13 because it has been redacted of any personal data identifiers.

4. This document complies with the electronic submission of the 5th Cir. R. 25.2.1, because it is an exact copy of the paper document. This documents was filed electronically, in native Portable Document File (PDF) format, via the Fifth Circuit's CM/ECF system.

5. This document has been scanned for viruses with the most recent version of Symantec Antivirus and is free of viruses.

s/ Darryl E. Austin
DARRYL E. AUSTIN